**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DON WORLEY & COMPANY, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA**<br><br>**Defendant** | **No. 1: 04-cv-1187** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION**

## INTRODUCTION

Comes now the Plaintiff Don Worley & Company, LLC ("Worley"), by and through counsel, and respectfully requests that this Court deny the Defendant's Motion for Reconsideration (the "Motion"), filed in the cause. The Order entered by this Court on July 29, 2008, clearly reveals its consideration of the merits of the Motion for Partial Summary Judgment filed by the Plaintiff, and establishes that it did not merely grant the Motion based on the failure of the Defendant to respond thereto. For this reason, and for the reasons articulated in this Court's Order, the granting of the Motion was appropriate, and the Motion for Reconsideration should be denied.

## ARGUMENT

I. The Record Supports This Court's Grant of Partial Summary Judgment.

As quoted by the Defendant in its Motion, the Motion for Partial Summary Judgment filed by Worley contended it was "entitled to be paid for dirt excavation under the contract at issue based on the difference between the original survey and the theoretical contours on the project drawings." (Emphasis added) (Plaintiff's Motion for Partial Summary Judgment as

quoted on page 3 of the Motion for Reconsideration). As further quoted in the Motion, Worley clearly contended in the Memorandum in Support of its Motion for Partial Summary Judgment that it was entitled to the sum of at least $303,451.95 for the excavation at issue. (pp. 1-2 of Plaintiff's Memorandum in Support of Motion in Support of Motion for Summary Judgment, as quoted in part by Defendant in the Motion on Page 4). For these reasons, the record unequivocally reveals that the Motion for Partial Summary Judgment was not merely drafted and filed as an intellectual exercise, that Worley believes it is actually owed money, and that Worley knows how much it is owed. In contrast, the position of the Defendant that Worley has not finalized its calculation of the theoretical quantity, from which the $303,451.95 was derived, is not supported in the Motion. The fact that the parties in the Joint Status Report dated September 24, 2007, stated they were trying to reach an agreement on the issue, does not provide support for the position that Worley had not as of that date, or any date prior thereto, finalized its calculation of the theoretical quantity and determined what it believed it was owed for its base excavation work. Rather, the fact that Worley arrived at this "to the penny" figure and billed it for excavation over six years ago, supports the supposition that it did way back then finalize the calculations of its base excavation quantities.

The Defendant further contends that the filing of the Stipulation on June 24, 2008, resolved all issues set forth in the Motion for Partial Summary Judgment; however, nothing in the substance of the Stipulation, states that is the case. As a matter of fact, as noted from the Stipulation attached to Don Worley's Affidavit, showing the date of February 7, 2007, when it was first agreed to, the Stipulation also did not at that time address all payment issues regarding the excavation line item at issue.

Lastly, the Defendant contends that Worley's Proposed Finding of Fact Number 9 somehow establishes that Worley does not know how much it is owed for excavation, and/or somehow establishes that the $303,451.95 sum placed in the record by Worley is erroneous. However, a review of the record at the location cited to by Proposed Finding Number 9 shows it to be almost a verbatim quote from the deposition of Wendell Norman, the Contracting Officer of the Defendant who was responsible for administering the contract on this project. This testimony was placed in the record by the Plaintiff in support of its Motion for Partial Summary Judgment simply to highlight the fact that the Corps had always agreed with the Plaintiff's interpretation of the contract provision at issue. That agreement, admitted in the testimony contained within Proposed Finding Number 9, when added to the fact that the Corp has not as of this late date, six years after the work was done, offered to pay one penny of the excavation quantity sought by the Plaintiff, to any objective observer undeniably establishes the Defendant's bad faith. That bad faith is further elucidated by the Defendant's failure to follow through on its agreement and file the Stipulation in early February of 2007, instead filing an almost identical Stipulation sixteen months later after it had successfully caused significant delay and caused the Plaintiff to expend thousands of dollars in attorneys fees to take discovery on the excavation issues and prepare and file the Motion for Partial Summary Judgment.

For all these reasons, the Defendant cannot from within the Motion for Partial Summary Judgment muster support for the proposition that it was improvidently granted.

II. The Defendant's Case Authorities Do Not Support the Granting of Its Motion.

The case law relied upon by the Defendant does not require this Court to reconsider its July 29, Order. At least two of the cases relied upon by the Defendant, Mullen v. St. Paul Fire and Marine Insurance Company, 972 F.2d 446 (First Cir. 1992), and Martinez v. Stanford, 323

F.3d 1178 (9 Car. 2003), are factually distinguishable. The Martinez v. Stanford case involved an appeal by a prisoner in a federal correctional institute from a summary judgment dismissing his 42 USC §1983 claim, and the Mullen v. St. Paul Fire and Marine case involved an action to collect interest on an insurance claim paid by the defendant to cover damages incurred during a fire at the plaintiff's business premises, both far cries from a dispute over payment under a single line item in a construction contract. Moreover, in addition to being factually distinguishable, the holdings of those two cases also do not require this Court to reconsider its July 29 Order. For instance, in reversing the unopposed summary judgment entered by the court in the Mullen v. St. Paul case, the court simply held that, "Mullen goes too far in arguing that it wins automatically because St. Paul did not timely oppose its motion." (Id. at p. 452). Worley does not here argue that this Court was entitled to grant its Motion for Partial Summary Judgment solely because the Defendant failed to file a response; thus, the holdings of these two cases are not controlling.

United States v. One Piece of Real Property located at 5800 SW 74th Avenue, Miami, Florida, 363 F.3d 1099 (11th Cir. 2004), is partially quoted from by the Defendant, which conveniently picks up its quotation in the middle of a sentence, the first part of which it does not quote: "The district court need not sua sponte review all the evidentiary materials on file at the time the motion is granted…." (Id. at p. 1102). Thus, even the Defendant's own authority establishes that this Court was not required to review the entirety of the two deposition transcripts filed by Worley, or to review the entire record, to determine whether or not the Motion for Partial Summary Judgment was well taken.

Another case heavily relied upon by the Defendant, Vermont Teddy Bear, Inc. v. One-800-BearGram Company, 373 F.2d 241 (2d Cir. 2004), contains an admonition, obviously ignored by the Defendant, that failing to submit a response to a summary judgment motion is a

"perilous path." (Id. at 244). It is clear from the analysis and holding of that case that the court's concern centered on its understanding from the record that the summary judgment at issue was granted by the district court solely because a response was not filed. (Id. at 244-245, and dissenting opinion at p. 247). In contrast, it is clear from the substantive July 29, Order of this Court granting partial summary judgment that it did not grant the motion simply because the government failed to file a response, but indeed that it actually reviewed the Motion for Partial Summary Judgment and substantively ruled on the issues contained therein.

In another case relied upon by the Defendant, Dunlap v. Trans America Occidental Life Insurance Company, 858 F.2d 629 (11th Cir. 1988), the 11th Circuit Court of Appeals actually affirmed the grant of an unopposed summary judgment by the district court below by noting that, "Trans American's Motion was supported by evidentiary materials of record, and the district court's order indicated that the merits of the motion were addressed." As previously addressed, this Court clearly addressed the merits of Worley's motion. It is also additionally clear that the primary concern of the Dunlap court was the belief the trial court had granted the summary judgment as a sanction under a local rule for the failure to respond to the motion, something that cannot be said about this Court's actions. (See, Id. at 632).

Likewise, the court in the case of Amaker v. Foley, 274 274 F.3d 677 (2d Cir. 2001), also relied upon by the Defendant, noted that it appeared the summary judgment being reviewed was granted by the district court "solely on the failure of the plaintiff to have filed any papers in opposition…." (Id. at p.680). Similarly, the last case relied upon by the Defendant is Jaroma v. Massey, 873 F.2d 17 (1st Cir. 1989), in which the court was also required to construe a local rule deeming the absence of a response to be a waiver of any objection to a summary judgment motion. The court concluded that the rule meant the opposing party, by failing to file a response

as required by the rule, waived the right to controvert the facts asserted by the moving party in the motion. It thus accepted as true all the material facts as set forth by the movant in the motion. (Id. at p. 21). Even though that court noted there was nothing in the record to suggest the district court had reviewed the motion and supporting papers prior to granting summary judgment, it affirmed that grant by the district court on the basis that the motion established entitlement to judgment as a matter of law. The court noted that although the district court had made no such finding, "[t]his court can affirm the district court's judgment on any basis presented by the record." (Id. at p. 22). If the actions of the district court in the Jaroma v. Massey case were not in error, then certainly the actions of this Court in reviewing Worley's Motion and ruling on the issues therein were proper.

The case of Guarino v. Brookfield Township Trustees, 980 F.2d 399 (6th Cir. 1992), is additionally instructive on the issues sub judice. Involved was a grant of summary judgment to defendants in a civil rights action stemming from an employment discharge by the police department in Brookfield Township, Ohio. The court granted an unopposed motion for summary judgment, and the Sixth Circuit Court of Appeals affirmed. On appeal, the plaintiffs argued that the district court had erred in not sua sponte searching the record for facts that might possibly have created a genuine issue for trial. The circuit court deemed the argument to be "wholly without merit," and opined that, "[t]he facts presented and designated by the moving party were the facts at hand to be dealt by the trial court." (Id. at 404). The Sixth Circuit's analysis leading to the affirmance of the summary judgment grant is lengthy, but given its clarity and its applicability to the specific facts of this case, it is here quoted in full:

> Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record. Beyond that, to adopt appellants' argument would require us to carry out on appeal a first review of what amounts to an expanded record and would result in a

substantial and needless expenditure of judicial resources in this and countless other cases….

If accepted and enforced, appellants' argument would leave nothing to discourage the non-moving party, especially one with a reasonably arguable case, from declining (or "forgetting" or being "too busy") to respond to a motion for summary judgment, secure in the knowledge that the district court would be required to excavate all of the presented record, and find for itself any nuggets of evidence that might demonstrate genuine issues of material fact. Even if the trial court were to grant the motion, this passive party could still relax, assured that he could timely file an appeal, flyspeck the factual record and the district court's opinion, and only then, on de novo review, identify for the court of appeals the answers, the exhibits and the other facts he wishes to assert as supporting specific issues. Indeed, precisely because the review is de novo, with the appellate court standing in the same position as did the trial court, Estate of Mills, supra, 965 F.2d at 115, no principle exists under appellants' argument that could legitimately deflect a nonmoving party's insistence that the appellate panel itself assume the duty to search for genuine issues. What concept of judicial economy is served when judges (at least one, perhaps as many as four) are required to do the work of a party's attorney? In many cases, such as this one, the materials presented by the moving party may be extensive. Here, the several volumes submitted with the motion included complete deposition transcripts with exhibits. From within this material, however, support for the moving party's argument was provided by designating evidence: referring the court to specific portions of the testimony and to certain exhibits. Now after remaining mute at the trial court level, appellants' argument invites up to mandate the trial judge's active assistance in opposing the motion.

Effectively searching the record for "genuine issues" requires time, of course, but it also requires an adroit knowledge of the core issues of proof in the case along with an ability to recognize how various threads of testimony, woven together, could possibly defeat a dispositive motion. It is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judge, who have been present at the depositions; and it is the attorneys, not the judges who have a professional and financial stake in [the] case outcome. Thus, the free-ranging search for supporting facts is a task for which attorneys in this case are equipped and for which courts generally are not. And then, as to the element of time – if our trial courts could conjure up things for themselves, we believe that "more time" would be high on most lists. Conjuring, though, still lies beyond grasp. To try to review the complete collection of exhibits, or to read each line of every page of all submitted depositions – much of which may not even be relevant to the real issues at hand – this represents to courts at both the trial and appellate levels an unrealistic ideal and unaffordable luxury.

> Additionally, it seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion. Such a role would carry the court far beyond simply reviewing evidence in "the light most favorable to the non-moving party," or giving effect to inferences reasonably arising from the designated evidence. For these and other entirely sound reasons, the Rule requires the non-moving party to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues.
>
> (Id. at 405-6).

Worley and its counsel did its work. As noted by the Guarino court relating to the case before it, Worley also submitted extensive materials in support of its Motion for Partial Summary Judgment, including an affidavit and two complete deposition transcripts. This Court was not required to scour those two extensive deposition transcripts to find all the evidence supporting Worley's Motion, and the Court was instead referred to the specific portions of the deposition testimony and to certain exhibits. The Defendant and its counsel then failed to assist the Court in determining whether or not the positions set forth in the Motion for Partial Summary Judgment warranted summary judgment. In the absence of this assistance to which it was entitled, the Court took it upon itself to review the Motion and the supporting materials, and in a manner completely approved of by the Guarino court, this Court then determined that no genuine issue of material fact existed as to the excavation payment issue and entered partial summary judgment.

## CONCLUSION

The substance of this Court's Order of July 29, 2008, as well as the obvious process by which the conclusions therein were reached, was not violative of this Court's rules or the case authorities relied upon by the Defendant. It is obvious from the Order's very substance that this Court did not grant the Motion for Partial Summary Judgment filed by Worley solely due to the

failure of the Defendant to file a response. It is equally as obvious that, even though not required to review the entire record and do the work required of Defendant's counsel, this Court did review the Motion and portions of the supporting evidentiary materials. For all these reasons, there is no legal or equitable basis requiring this Court to reconsider its July 29 Order. The Motion for Reconsideration must be denied.

Respectfully,

/S/
Ted M. Hayden TN BPR No. 10471
The Hayden Law Firm, PLLC
2198 Judicial Drive
Germantown, Tennessee 38138
(901) 737-6480 phone
(901) 737-6481 facsimile
Attorneys for Don Worley & Company, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2008, a copy of the foregoing document was filed electronically and transmitted to:

Roger A. Hipp
Commercial Litigation Branch, Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

/S/
Ted M. Hayden